IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARY MURPHY | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: BPG-19-1008 |
| WALMART, INC., *et al.*, | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4. (ECF No. 21). Currently pending are defendant's Motion for Summary Judgment ("Motion") (ECF No. 30), plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition") (ECF No. 35), and defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Reply") (ECF No. 36). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, defendant's Motion for Summary Judgment (ECF No. 30) is GRANTED.

**I.      BACKGROUND**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the plaintiff in this case. Scott v. Harris, 550 U.S. 372, 378 (2007). Plaintiff Mary Murphy ("plaintiff") allegedly

sustained personal injuries on June 8, 2018 while at a store owned and operated by defendant Walmart, Inc. ("defendant" or "Walmart") in Columbia, Maryland. (Am. Compl., ECF No. 13 at ¶ 4). This incident was captured on Walmart surveillance video footage ("video footage"), which depicts a single aisle from the entrance of the store ("entrance aisle") to a cross-aisle. (Defs.' Ex. 3, ECF No. 30-4). The cross-aisle, which plaintiff reached from the beginning of the entrance aisle in approximately nineteen steps, is perpendicular to the entrance aisle. (Id. at 12:47:14-12:47:27). Plaintiff slipped at the cross-aisle. (Id.) Approximately twenty minutes before plaintiff entered Walmart, at 12:26pm, the video footage shows an unknown male customer walked down the entrance aisle past the cross-aisle and continued down the entrance aisle out of the video's view. (Id. at 12:26:27-12:26:53). This unknown male customer carried a baby in his arms (collectively referred to as "the man with the baby"), who held a baby bottle at a horizontal angle to the floor ("baby bottle evidence"). (Id.) After the man with the baby walked down the entrance aisle but before plaintiff entered the entrance aisle, that is between 12:27pm and 12:45pm, approximately 150 people walked down the entrance aisle from the entrance of the store to the cross-aisle. These 150 people followed the path of the man with the baby from the entrance of the store to the cross-aisle without apparent incident. (Id. at 12:26:39-12:47:13).

At approximately 12:46pm, the video footage shows that a different unidentified male customer slipped at the cross-aisle. (Id. at 12:46:42). At approximately 12:47pm, plaintiff entered Walmart, walked down the entrance aisle nineteen steps towards the cross-aisle, and slipped in approximately the same location as the unidentified male customer at the cross-aisle. (Id. at 12:47:14-12:47:27). The video footage shows that plaintiff, partially blocked in view by another customer and that customer's shopping cart, walked down the entrance aisle before she suddenly stopped, bent over at the waist, and put her left hand up in the air in an apparent effort to balance

2

herself. (Id.) Plaintiff's slip occurred approximately forty-five seconds after the unidentified male customer's slip. While nothing is visible on the floor on the video footage, plaintiff maintains that she looked down at the floor where she slipped and saw a clear liquid. (Id.; ECF No. 35 at 2). Less than one minute after she slipped, plaintiff reported that there was liquid on the floor to a Walmart employee at the customer service desk. (Pl.'s Depo., ECF 30-2 at 80:14-81:4).

Approximately six minutes after plaintiff slipped, at 12:53pm, the video footage shows an unidentified female customer pointing out to a Walmart employee something that was on the floor at the beginning of the entrance aisle. (ECF No. 30-4 at 12:53:50). This area was not at the cross-aisle where plaintiff and the unidentified male customer slipped, but at the beginning of the entrance aisle. (Id.) The video footage shows that the same Walmart employee took steps to rectify what the unidentified female customer pointed out on the floor. Although nothing was visible on the video footage, it appeared to be a spill given the employee's actions. Specifically, the employee directed customers around the area, placed a yellow cone there, dropped paper towels on the floor, and used his foot to push the paper towels around the floor. (ECF No. 30-4 at 12:53:50-1:02:15).

On February 15, 2019, plaintiff filed suit against defendant in the Circuit Court of Maryland for Howard County. (Compl., ECF No. 1). Plaintiff states a negligence claim, asserting that defendant breached its duty of care to her by "failing to warn the public generally, and the Plaintiff, Mary Murphy, specifically of any hazardous conditions in its public walkways." (Id. ¶ 4). Plaintiff seeks damages in the amount greater than $75,000.00. (Id. at 4).

On April 1, 2019, defendant filed a Petition for Removal to this court on the grounds of diversity of citizenship pursuant to 28 U.S.C. § 1332(a).[1] (ECF No. 1). Discovery closed on April 6, 2020, and thereafter, the pending Motion and related pleadings were filed.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 252.

---

[1] Defendant's Petition for Removal was entered by the Clerk on April 3, 2019. (ECF No. 1).

4

In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party. Anderson, 477 U.S. at 252.

## III.   DISCUSSION

Defendant moves for summary judgment, stating that plaintiff cannot establish a prima facie case of negligence because plaintiff failed to offer evidence that defendant had actual or constructive knowledge of the alleged hazard. (ECF No. 30-1 at 5-6; ECF No. 36 at 6). To assert a claim of negligence in Maryland, plaintiff must prove that: (1) the defendant was under a duty to protect plaintiff from injury, (2) the defendant breached that duty, (3) plaintiff suffered actual injury or loss, and (4) the injury or loss proximately resulted from defendant's breach of duty.[2] 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co., 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013). As a customer in a store maintained by defendant, plaintiff was a business invitee to whom

---

[2] Because the court's jurisdiction over this matter is based on diversity of citizenship, the court must apply Maryland law to issues of substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) ("As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule.").

defendant owed a duty to "use reasonable and ordinary care to keep the premises safe . . . and to protect [her] from injury caused by an unreasonable risk that [she], exercising ordinary care for [her] own safety, [would] not discover." Henley v. Prince George's Cnty., 503 A.2d 1333, 1343 (Md. 1986). "[N]o presumption of negligence on the part of the proprietor," however, "arises merely from a showing that an injury was sustained in his store." Garner v. Supervalu, Inc., 396 Fed. App'x 27, 29 (4th Cir. 2010). Maryland courts have emphasized that a store operator is "not an insurer of the safety of his customers," Moulden v. Greenbelt Consumer Servs., Inc., 210 A.2d 724, 725 (Md. 1965), and have held that it would be unreasonable to impose a duty on a proprietor to continuously inspect the premises. See, e.g., Lexington Mkt. Auth. v. Zappala, 197 A.2d 147, 148 (Md. 1964) (commercial business owner did not breach duty of care by failing to instantaneously detect and correct dangerous condition of oil or grease on parking garage floor which allegedly caused customer to fall). Accordingly, "the burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence." Joseph v. Bozzuto Mgmt. Co., 173 Md. App. 305, 315-316 (Md. Ct. Spec. App. 2007).

The issue in this case is whether defendant had constructive notice of the hazardous condition that caused plaintiff to slip.[3] Under Maryland law, in the absence of evidence that the proprietor had actual notice of the existence of a dangerous condition before an invitee's fall, an invitee must prove that the proprietor had constructive knowledge of the defective condition. Maans v. Giant of Md., L.L.C., 161 Md. App. 620, 631 (Md. Ct. Spec. App. 2005). A plaintiff may establish constructive knowledge if the plaintiff shows that the hazardous condition existed for a sufficient period of time for a proprietor to remedy the condition or to warn of it. Id. at 638;

---

[3] Whether defendant had actual notice of the hazardous condition is not at issue. Plaintiff admits she has no evidence demonstrating defendant had actual notice. (ECF No. 35-1 at 1). Therefore, plaintiff may only proceed under a theory of constructive notice.

6

see also Deering Woods Condominium Ass'n v. Spoon, 833 A.2d 17, 24 (Md. 2003) ("[I]f it is shown that the conditions have existed for a time sufficient to permit one, under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them."). The Maryland courts refer to this type of evidence as "time on the floor" evidence. Maans, 161 Md. App. at 638. Evidence of "the size or nature of the spill is not a substitute for 'time on the floor' evidence." Saunders v. Wal-Mart Stores, Inc., No. JKS-09-2330, 2010 WL 1416542, at *4 (D. Md. Apr. 5, 2010). Rather, the court looks to the circumstances surrounding plaintiff's incident. Deering Woods, 833 A.2d at 24-25 ("What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions." (quoting Moore v. American Stores Co., 182 A. 436, 440 (Md. 1936))).

Plaintiff argues the baby bottle evidence, in addition to the spill discovered several minutes after plaintiff's slip, constitutes the time on the floor evidence required to show defendant had constructive notice of the hazard. (ECF No. 35-1 at 8, 10). Specifically, plaintiff maintains that the horizontally held baby bottle created both the spill on which plaintiff slipped at the cross-aisle as well as the spill discovered six minutes after plaintiff's slip at the beginning of the entrance aisle because the man with the baby walked through both of these areas. (Id.) While the video footage confirms the man with the baby walked down the entrance aisle and through the cross-aisle close to where plaintiff slipped, and that the baby was holding a bottle horizontal to the floor, there is no evidence that there was liquid in the bottle or that the bottle was spilling as the man with the

7

baby walked down the entrance aisle and through the cross-aisle. Additionally, after the man with the baby walked down the entrance aisle, approximately 150 people walked from the beginning of the entrance aisle to the cross-aisle. (Id. at 12:26:39-12:47:13). Most, but not all, of these people walked through the path taken by the man with the baby. (Id.) The video footage does not depict any of these people slipping, pointing to the ground, or avoiding any area of the floor, except for one – an unidentified male customer who slipped at the cross-aisle, in the same area as plaintiff, approximately forty-five seconds before plaintiff slipped. (Id. at 12:46:42).

   The baby bottle evidence offered by plaintiff is speculative and, as a result, does not create a genuine issue of material fact. Anderson, 477 U.S. at 252. Plaintiff's theory is based upon "building one inference upon another." Id. Plaintiff infers that: 1) the baby bottle leaked; and 2) the leak caused the two later spills – the spill on which the unidentified male customer and plaintiff slipped on at the cross-aisle and the spill identified by the unidentified female customer at the beginning of the entrance aisle six minutes after plaintiff slipped. No evidence exists to support these inferences other than the fact that the man and baby walked through or near the areas where these spills were later discovered. "[The] inference must . . . be a legitimate inference and not a mere speculation or conjecture. There must be a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them." Benedick v. Potts, 40 A. 1067, 1068 (Md. 1898). Here, there is no proof whatsoever, other than speculation, that the baby bottle leaked. Indeed, that speculation is belied by the fact that 150 people walked through these same areas, without incident, after the man with the baby walked down the entrance aisle.

"Mere speculation" does not create, and here has not created, a genuine issue of material fact.[4] Cox, 249 F.3d at 299.

The court notes that the unidentified male customer slipped in the same general location as plaintiff prior to plaintiff's fall. Given that his slip occurred only forty-five seconds before plaintiff's slip, however, the court cannot conclude that a hazardous condition existed for a sufficient period of time so as to construe constructive notice. See Page v. Supervalu, Inc., No. WGC-14-1508, 2015 WL 1439572, at *7 (D. Md. March 26, 2015) ("[A] five minute interval is not an appreciable length of time for Supervalu to discover and remove a single grape from the floor."); Rehn v. Westfield America, 837 A.2d 981, 985 (Md. Ct. Spec. App. 2003) (concluding four minutes was not enough time to establish constructive notice); see also Oliver v. Maxway Stores, No. WGC-12-3033, 2013 WL 6091844 (D. Md. Nov. 18, 2013) (finding 30 minutes may have been sufficient to constitute constructive notice); Jones v. Wal-Mart Stores, Inc., No. WGC-12-1334, 2013 WL 1742136 (D. Md. Apr. 22, 2013) (finding 31 minutes was a sufficiently long period of time); Mack-Epps v. Supervalu, Inc., No. WMN-11-530, 2011 WL 4985816 (D. Md. Oct. 18, 2011) (concluding 20 minutes may have been sufficient to constitute constructive notice).

Further, the court does not find plaintiff's reliance on the court's denial of defendants' summary judgment motion in Wiseman v. Walmart Stores, Inc., et al., No. SAG-16-4030, 2017 WL 3334858, at *3 (D. Md. Aug. 4, 2017) to be persuasive. This case is factually distinguishable from Wiseman, most notably because the Wiseman video footage showed both a customer creating

---

[4] The court also rejects as even more speculative plaintiff's other arguments as to why defendant had constructive notice of a hazardous condition (i.e., a man sidestepped something in the entrance aisle; a Walmart employee and Mr. Clark did not see the liquid when they walked through the entrance aisle and cross-aisle; or that fault can be laid upon the Walmart greeter because he was not at his station). (ECF No. 35-1 at 4, 6, 9). There is no evidence to suggest the spill on which plaintiff slipped existed at the time of any of these events.

a spill as well as a dark liquid on the ground. Id. at *4. The court in Wiseman found the testimony of the plaintiff to be "particularly probative" because the spill she said she fell on was a dark, "soda-like" substance, and the pictures she took substantiated this claim. Importantly, coupled with this evidence was the video showing the spill created by the customer was also a dark liquid. Id. at *4-5. In this case, there are no videos or photographs which show any spill, let alone an arguable connection between an actual spill and a spill which caused plaintiff to slip. In sum, plaintiff has not established that "specific, material facts exist to create a genuine, triable issue." Celotex, 447 U.S. at 324. Accordingly, defendant's motion for summary judgment will be granted.[5]

## IV.   CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (ECF No. 30) is GRANTED. A separate order will be issued.

September 29, 2020                                     /s/
                                                       Beth P. Gesner
                                                       Chief United States Magistrate Judge

---

[5] Given the court's rulings herein, the issue of plaintiff's contributory negligence as argued by defendant need not be addressed. (ECF No. 30-1 at 13-14).